ace

## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| STATE OF KANSAS, UNIVERSITY OF KANSAS HOSPITAL AUTHORITY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 05-2301-JAR |
| BRIAN TITUS | ) ) | |
| Defendant. | ) ) | |
| BRIAN TITUS, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN ITALIAN PASTA COMPANY EMPLOYEE HEALTH CARE PLAN, | ) ) ) ) | |
| Third-Party Defendant. | ) ) | |

## <u>MEMORANDUM ORDER AND OPINION</u>

This matter comes before the Court on the third-party plaintiff's and third-party

defendant's cross motions for summary judgment. Third-party plaintiff, Brian Titus ("Mr.

Titus"), moves for summary judgment against third-party defendant, American Italian Pasta

Company Employee Health Care Plan ("the AIPC Plan"), on his claim under the Employee

Retirement Income Security Act ("ERISA"),[1] alleging that the AIPC Plan wrongfully denied

---

[1] 29 U.S.C. §§ 1001–1461.

benefit payment that Mr. Titus was entitled to under the AIPC Plan (Doc. 20).  At the same time,

the AIPC Plan moves for summary judgment on Mr. Titus's ERISA claim, alleging that Mr.

Titus does not qualify for benefit payment under the terms and conditions of the AIPC Plan

(Doc. 18).  For the reasons below, the Court grants Mr. Titus's motion for summary judgment

and denies the AIPC Plan's motion for summary judgment.

## I.      Uncontroverted Facts

At all times relevant to this action, Mr. Titus was employed by American Italian Pasta

Company and Subsidiaries, and participated in the AIPC Plan.  The AIPC Plan is self-funded,

and the claims are administered by the Claims Supervisor, FMH Benefit Services, Inc., under

contract with the Plan Sponsor, American Italian Pasta Company and Subsidiaries.  Under the

AIPC Plan,

> [t]he Fiduciary and the Plan Sponsor have full discretionary authority to interpret and
> apply all Plan provisions (this includes the power to make factual findings and
> determinations), including, but not limited to, all issues concerning eligibility for and
> determination of Benefits. . . . Decisions of the Plan Sponsor shall be final and
> binding, and subject to the most deferential standard on review.[2]

The AIPC Plan provides reimbursement of medical expenses to covered employees for

covered expenses.  The AIPC Plan defines "Covered expenses" as:

> The portion of a medical expense incurred by or on behalf of a covered Employee
> or covered Dependent which is eligible for reimbursement under this Plan, but
> only to the extent the amount of the expense is the Usual, Customary and
> Reasonable (UCR) charge for the service or supply, as determined by the Plan,
> and provided further that the expense is for medical service or supply which is:
> •       ordered by a Physician;
> •       Medically Necessary for the treatment of the Sickness or Injury (except
>         where the expense is for preventative care covered under the Plan);
> •       not of a luxury or personal nature; and

---

[2](AR 50.)

- not excluded under the *Exclusions and Limitations* section of this Plan.[3]

The AIPC Plan provides a list of "covered expenses" that includes "[c]harges for a Medically

Necessary surgical procedure."[4]  The AIPC Plan defines "Medically Necessary" as:

> Medical service, supplies or treatment which:
> - are appropriate and required for the diagnosis or treatment of the Accidental Injury, Sickness, or pregnancy;
> - are safe and effective according to accepted clinical evidence reported by generally recognized medical professionals or publications; and
> - are not less intensive or more appropriate diagnostic or treatment alternatives that could have been used in lieu of the services or supplies given.[5]

The AIPC Plan also contains a section of General Exclusions and Limitations.  This section

states:

> **Except as and to the extent otherwise provided in this booklet**, Covered Expenses do not include, and no benefit will be paid with respect to:
> . . .
> 11.    Charges for marriage or family counseling and sex therapy, including surgery and/or prosthetic devices.
> 43.    Charges for services or supplies received for treatment of complications resulting from services that are not covered.[6]

In 1985, Mr. Titus had surgery to implant a penile prosthesis and an artificial urinary

sphincter.  The implant failed and was revised in 1993 and again in 1995.  On or about April 25,

2004, Mr. Titus noted that the penile implant did not deflate as it should.  On April 28, 2004, Mr.

Titus was examined in the urology clinic at the University of Kansas Medical Center by Dr. John

Weigel.  Dr. Weigel noted that Mr. Titus's penile implant did not "delumesce properly on the

---

[3](AR 12.)

[4]*Id.*

[5](AR 15.)

[6](AR 30–31.)

right side" and that Mr. Titus had a little tenderness distally.[7]  Dr. Weigel believed that a kink in

the system may have developed on the right side.  Additionally, Dr. Weigel noted there was no

infection, and that infection is always a concern when there is pain around an implant.

Afterwards, Mr. Titus was seen by another physician, Dr. Jeffery Holzbeierlein.  On

April 30, 2004, Dr. Holzbeierlein noted that Mr. Titus's penile prosthesis was no longer

functioning properly, but that his artificial urinary sphincter was functioning well.  Dr.

Holzbeierlein found that the right cylinder was somewhat tender and did not seem to deflate.  Dr.

Holzbeierlein discussed the replacement of the penile implant with Mr. Titus, and explained the

increased risk of the procedure as this was the third replacement.  It was noted that Mr. Titus

understood that the penile implant is a mechanical device that can fail for mechanical reasons.

Nevertheless, Mr. Titus told Dr. Holzbeierlein that he would like to proceed with the surgery.  In

a medical report, dated May 5, 2004, Mr. Titus denied any acute problems except that his penile

prosthesis was not working.

On or about May 10, 2004, Dr. Holzbeierlein sought precertification of the procedure,

and the precertification was denied.  In a telephone conversation on April 30, 2004, the Claims

Supervisor verbally explained to the hospital that the procedure would not be covered.[8]  The

Claims Supervisor also explained to Mr. Titus that the procedure was not covered in telephone

conversations on May 6, 2004 and May 10, 2004.[9]  On May 12, 2004, Dr. Holzbeierlein stated in

a letter that Mr. Titus's prosthesis was no longer functioning properly.  He also noted that

"[m]ore worrisome, however, is the discomfort in the right cylinder of the prosthesis.  This may

---

[7](AR 75.)

[8](AR 109.)

[9](*Id.*)

often be an indicator of early infection.  Therefore, it is extremely important and medically indicated that the patient have this prosthesis removed and a new one placed."[10]

Mr. Titus underwent surgery to replace his penile implant on June 2, 2004.  On or about June 17, 2004, Mr. Titus's claims for benefits were denied.  Mr. Titus received Explanation of Benefits forms from the Claims Supervisor explaining that the claim is not covered by the AIPC Plan and informing him that the patient is responsible for payment.[11]  Each Explanation of Benefits form states:

> If your claim is wholly or partially denied, upon written request the plan sponsor will provide a copy of any internal guideline or similar criteria we relied on.  If we've applied an exclusion for medically unnecessary or experimental treatments, or a similar exclusion, upon written request the plan sponsor will provide an explanation of the scientific or clinical judgment involved.  You may appeal any denied portion of this claim within either 60 or 180 days (your plan booklet describes which) from your receipt of this statement.  If you are not satisfied with the decision on appeal you may bring a civil action to enforce your rights.  Your booklet describes the claim and appeal process in detail. Patient is responsible for deductible, copay, coinsurance, non-covered and over R&C amounts.  The patient responsibility may include amounts already paid at the time of service.[12]

On June 25, 2004, Mr. Titus informed the Claims Supervisor that he would exercise his right to appeal the denial of charges.  Mr. Titus also requested a copy of the internal guidelines regarding the denial of benefits.  There is no evidence in the record that Mr. Titus received a response to the June 25, 2004 letter.  In a letter dated July 16, 2004, the Claims Supervisor notified Mr. Titus that his appeal had been denied because the AIPC Plan specifically excluded charges in connection with a penile implant pursuant to sections 11 and 43 of General Limitations and Exclusions.  As described above, these sections exclude "[c]harges for marriage or family

---

[10](AR 91.)

[11](AR 67–70.)

[12](*Id.*)

counseling and sex therapy, including surgery and/or prosthetic devices" and "[c]harges for services or supplies received for treatment of complications resulting from services that are not covered."

Afterwards, plaintiff, State of Kansas, University of Kansas Hospital Authority, brought suit in state court against Mr. Titus to recover the fees from his medical procedure.  Mr. Titus answered this petition and brought a third-party petition against the AIPC Plan asserting claims under ERISA.  Because the ERISA claims invoked federal question jurisdiction, the action was removed to federal court.  Mr. Titus now moves for summary judgment arguing that there is no genuine issue of material fact as to whether the AIPC Plan violated ERISA by failing to (1) properly notify Mr. Titus of the denial of his claim, (2) allow Mr. Titus "full and fair review" of the denial of benefits, and (3) make a reasonable interpretation of the AIPC Plan terms.  The AIPC Plan has also moved for summary judgment arguing that there is no genuine issue of material fact as to whether Mr. Titus was properly denied benefits under the AIPC Plan.

## II.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[13]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[14]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[15]  The inquiry essentially determines if there is a need for trial,

---

[13]Fed. R. Civ. P. 56(c).

[14]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[15]*Id.*

6

or whether the evidence "is so one-sided that one party must prevail as a matter of law."[16]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[17]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[18]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[19]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[20]  "Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[21]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[22]

## III.   Analysis

Mr. Titus's claim arises under 29 U.S.C. § 1132(a)(1)(B), which provides that a

---

[16]*Id*. at 251–52.

[17]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[18]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325)).

[19]*Id*.

[20]*Id*.

[21]*James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citing *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 691-92 (10th Cir.1981)), *cert. denied*, 523 U.S. 1048 (1998).

[22]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

beneficiary may bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  The Supreme Court has held that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[23]  In this case, the AIPC Plan grants discretionary authority to the fiduciary.  The AIPC Plan reads: ""[t]he Fiduciary and the Plan Sponsor have full discretionary authority to interpret and apply all Plan provisions (this includes the power to make factual findings and determinations), including, but not limited to, all issues concerning eligibility for and determination of Benefits."[24]  When a plan grants discretion, ""[a] court reviewing a challenge to a denial of employee benefits . . . applies an "arbitrary and capricious" standard to a plan administrator's actions.'"[25]  Thus, because the AIPC Plan grants discretion, the Court will apply an arbitrary and capricious standard when reviewing the decision to deny benefit payment to Mr. Titus.[26]

However, Mr. Titus contends that a *de novo* standard should be applied because the plan administrator did not interpret the "Medically Necessary" coverage provision and did not

---

[23]*Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[24](AR 50.)

[25]*Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004) (quoting *Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998)).

[26]The Court recognizes that "[t]he possibility of an administrator operating under a conflict of interest, however, changes the analysis."  *Fought*, 379 F.3d at 1003.  However, there is no conflict of interest issue raised in this case.  The AIPC Plan is self-funded.  The Claim Supervisor, FMH Benefit Services, Inc., administers claims.  There is no evidence that the administrator has a financial interest in rejecting claims, and therefore, there is no evidence of a conflict of interest.  *Gaither v. Aetna Life Ins. Co.*, 388 F.3d 759, 768 (10th Cir. 2004).  Therefore, the Court need not apply an alternative standard of review.

consider whether the medical necessity of the procedure entitled Mr. Titus to coverage under the AIPC Plan.  To support this argument, Mr. Titus cites *Shields v. Continental Casualty Company*.[27]  In *Shields*, the court was presented with an issue that did not involve eligibility for plan benefits or the administrator's decision.[28]  Instead, the issue was whether one of the terms in the plan, "legal spouse," was ambiguous.[29]  Because the plan administrator made no explicit decision as to whether the term was unambiguous, the court analyzed the ambiguity of the term under a *de novo* standard.[30]  But because the plan gave the administrator discretionary authority to determine eligibility for coverage, the court reviewed the eligibility decision under an arbitrary and capricious standard.[31]  In this case, Mr. Titus is not asking the Court to determine whether a term in the AIPC Plan is ambiguous.  Instead, the Court need only review the administrator's determination that Mr. Titus was not eligible for coverage under the AIPC Plan.  Therefore, the Court will not apply a *de novo* standard of review as Mr. Titus requests.  Rather, the Court will apply the arbitrary and capricious standard to the administrator's decision in accordance with federal case law.

**A.      ERISA Procedural Requirements on Notification and Full and Fair Review**

Mr. Titus claims that the AIPC Plan failed to comply with the procedural requirements of ERISA and the AIPC Plan.  Further, Mr. Titus claims that this failure denied him the opportunity for a full and fair view of his claim.  ERISA provides that benefit plans shall

---

[27]209 F. Supp. 2d 1167 (D. Kan. 2002).

[28]*Id.* at 1174.

[29]*Id.*

[30]*Id.* at 1175.

[31]*Id.*

9

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.[32]

The regulations provide that notification to the claimant shall set forth

(i) The specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based; (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such information is necessary; (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following adverse benefit determination on review.[33]

The denial letter must "set out in opinion form the rationale supporting [its] decision" so that a claimant may "adequately prepare himself for any further administrative review, as well as an appeal to the federal courts."[34]  Substantial compliance with procedural requirements will satisfy ERISA, provided the claimant has an opportunity for full and fair review.[35]  A full and fair review means "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision."[36]

---

[32]29 U.S.C. § 1133.

[33]29 C.F.R. § 2560.503-1(g)(1).

[34]*Baker v. Tomkins Indus., Inc.*, 339 F. Supp. 2d 1177, 1186 (D. Kan. 2004) (quoting *Richardson v. Cent. States, S.E. & S.W. Areas Pension Fund*, 645 F.2d 660, 665 (8th Cir. 1981)).

[35]*Id.*

[36]*Sage v. Automation, Inc. Pension Plan and Trust*, 845 F.2d 885, 895 (10th Cir. 1988) (quoting *Grossmuller v. Int'l Union, United Auto., Aerospace & Agric., Implement Workers of Am. UAW, Local 813*, 715 F.2d 853, 858 n.5 (3d Cir. 1983)).

10

Further, the AIPC Plan imposes similar requirements in a section titled "Form and

Consent of Notice of Adverse Determination of Claims," that states:

> If a claim is denied in whole or in part, notice of such adverse determination will
> be provided to the Claimant.  Notice will be written or electronic; oral notice
> might be provided only with respect to urgent care claims, but only if written or
> electronic confirmation is furnished to the Claimant within three (3) days after the
> oral notice is provided.
> The notice will include the following:
> - the specific reason or reasons for the adverse determination;
> - reference to the specific Plan provisions on which the determination is
>   based;
> - if applicable, a description of any additional information needed for the
>   Claimant to perfect the claim and an explanation of why such information
>   is needed;
> - a description of the Plan's review procedures, including the Claimant's
>   right to bring a civil action under Section 502(a) of ERISA;
> - a copy of any internal rule, guideline, protocol or other similar criteria
>   relied on in making the adverse determination or a statement that it will be
>   provided without charge upon request;
> - if the adverse determination is based on medical necessity or experimental
>   treatment or a similar exclusion or limit, either an explanation of the
>   scientific or clinical judgment, applying the terms of the Plan to the
>   Claimant's medical circumstances, or a statement that this will be
>   provided without charge upon request; and
> - in the case of an adverse determination involving urgent care, a
>   description of the expedited review process available to such claims.[37]

Mr. Titus contends that the AIPC Plan failed to adhere to the provisions in their own policy, and

that the failure to comply with its own plan, along with the ERISA requirements, is significant

when determining whether the decision to deny benefits was arbitrary and capricious.[38]

---

[37](AR 46.)

[38]*See Doyle v. Nationwide Ins. Co. & Affiliates*, 240 F. Supp. 2d 328, 344 (E.D. Pa. 2003) (citations omitted) (finding that administrator's failure to provide specific reasons for the denial weighed in favor of finding that the decision was arbitrary and capricious); *see also Chatterron v. IHC Health Plans, Inc.*, No. 05-130-TC, 2006 WL 1073466, at *13 (D. Utah Apr. 20, 2006) (quoting *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan*, 349 F.3d 1098, 1105 (9th Cir. 2003) (quoting *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353–54 (9th Cir. 1984))) ("'[I]f procedural violations results in "substantive harm," then "a court must consider [such violations] in determining whether the decision to deny benefits in a particular case was arbitrary and capricious ."'")

First, Mr. Titus contends that the AIPC Plan failed to comply with ERISA and its own requirements when it denied Dr. Holzbeierlein's request for precertification of the procedure. Although the Claims Supervisor verbally denied this request, the AIPC Plan argues that this request was not a claim for benefits and, therefore, the procedural requirements do not apply. Under the terms of the AIPC Plan, a beneficiary or his physician must contact the plan sponsor's medical review specialist five days prior to hospitalization, and have the proposed admission and treatment plan reviewed and approved or "precertified."[39]  The precertification form sent by Dr. Holzbeierlein designated Mr. Titus's hospital stay as "same day [inpatient] admit."[40]  Citing the terms of the Plan, the AIPC Plan argues that "same day [inpatient] admit" is not considered an inpatient hospitalization, and thus, precertification was not required.  However, the language of the AIPC Plan does not include any reference to "same day inpatient admits."  Instead, the AIPC Plan states that the medical review specialist reviews "the Medical Necessity of *all* Hospital admissions and the length of that Hospital stay."[41]  The precertification form listed Mr. Titus's hospital stay as "same day [inpatient] admit," which was a hospital admission.  Because all hospital admissions require precertification under the AIPC Plan, Mr. Titus's request for "same day [inpatient] admit" also required precertification.

The precertification request was also a claim for benefits.  Under 29 C.F.R. § 2560.503-1(e),

> a claim for benefits is a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims.  In the case of a group health plan, a claim for benefits includes any pre-service claims

---

[39](AR 21.)

[40](AR 76.)

[41](AR 21) (emphasis added).

12

within the meaning of paragraph (m)(2) of this section and any post-service
claims within the meaning of paragraph (m)(3) of this section.

Paragraph (m)(2) of that section defines pre-service claim as "any claim for a benefit under a

group health plan with respect to which the terms of the plan condition receipt of the benefit, in

whole or in part, on approval of the benefit in advance of obtaining medical care."  Because the

regulations include pre-service claims as claims for benefits, Mr. Titus's precertification request

was a claim for benefits that called for compliance with the ERISA procedural requirements.

The Claims Supervisor verbally denied this request, thereby failing to comply with the

procedural requirements under ERISA and the AIPC Plan, both of which require notice of denial

in writing.  Thus, the AIPC Plan's precertification denial was deficient, and this is evidence of

the AIPC Plan's intent to arbitrarily terminate Mr. Titus's benefits.[42]

Second, Mr. Titus argues that the AIPC Plan's denial of his post-surgery claims violated

the procedural requirements of ERISA.  After Mr. Titus underwent surgery on June 2, 2004, he

received notice of the claim denial when the Claims Supervisor sent him three Explanation of

Benefits forms dated June 17, 2004.[43]  These forms stated that the procedure was not covered

under the AIPC Plan, but failed to reference the specific plan provision upon which the

determination was based.  The form did notify Mr. Titus that "upon written request the plan

sponsor will provide a copy of any internal guideline or similar criteria we relied on" in denying

the claim.[44]  These forms also described Mr. Titus's appeal rights.  The forms did not inform Mr.

---

[42]*See Johnson v. Dayco Products, Inc.*, 973 F. Supp. 1255, 1264 (D. Kan. 1997) (finding that defendant's
violation of ERISA by failing to advise plaintiff that her benefits were being terminated and by failing to give any
reason for its action was further evidence that defendant's acts were arbitrary).

[43](AR 67–70.)

[44](*Id.*)

13

Titus of additional information needed to perfect his appeal, but the AIPC Plan contends that such information was not necessary.

On June 25, 2004, Mr. Titus sent a letter to the Claims Supervisor requesting additional information regarding his claim denial and advising that he was appealing the initial denial.[45] There is no evidence in the record that Mr. Titus received a response to this request.  Mr. Titus did not submit additional evidence or argument in his appeal.  On July 16, 2004, the Claims Supervisor sent Mr. Titus a letter denying his appeal and listing the specific provisions of the AIPC Plan under which the procedure was excluded.[46]  The letter stated that the procedure was "specifically excluded" under the AIPC Plan as a charge for "sex therapy" and as a charge for "services or supplies received for treatment of complications resulting from services that are not covered."[47]

The AIPC Plan argues that the post-surgery denials, as described above, substantially complied with the ERISA procedural requirements, giving Mr. Titus an opportunity for full and fair review, thereby satisfying ERISA.[48]  The AIPC Plan contends that Mr. Titus was at all times aware of the denial and the reasons for the denial.  Prior to Mr. Titus's surgery, the Claims Supervisor verbally notified the hospital that the surgery would not be covered.[49]  This occurred in a telephone conversation on April 30, 2004.[50]  Further, the Claims Supervisor explained to Mr.

---

[45](AR 66.)

[46](AR 65.)

[47](*Id.*)

[48]*Baker v. Tomkins Industries, Inc.*, 339 F. Supp. 2d 1177, 1186 (D. Kan. 2004).

[49](AR 109.)

[50](*Id.*)

14

Titus in a telephone conversation on May 6, 2004, that the surgery was not covered. Additionally, the AIPC Plan told Mr. Titus on May 10, 2004, that the surgery would not be covered.

The Court finds that the post-surgery denial, as stated in the Explanation of Benefits forms, substantially complied with two of the four requirements. However, the Explanation of Benefits failed to adhere to 29 C.F.R. § 2560.503-1(g)(1)(i) and (ii) because the form merely stated that the procedure was not covered by the AIPC Plan without referencing a specific reason as to why or the specific plan provision upon which the determination was based. Further, the Court rejects the AIPC Plan's argument that it complied with the notice requirements by verbally informing Mr. Titus of the reasons for the denial. Under 29 U.S.C. § 1133(1), the AIPC Plan was obligated to provide adequate notice in writing to Mr. Titus when his claim for benefits was denied. The verbal notice fails to comply with the ERISA notification requirements.

As to the July 16, 2004 letter denying Mr. Titus's appeal, the Court finds that the letter substantially complied with 29 C.F.R. § 2560.503-1(g)(1)(i) and (ii) by listing the specific reason for the denial in that the "penile implant" was "specifically excluded" under sections 11 and 43 of the General Limitations and Exclusions. Although this letter did not provide Mr. Titus with additional information necessary to perfect the claim to comply with 29 C.F.R. § 2560.503-1(g)(1)(iii), the Court recognizes that the exclusion of this additional information is irrelevant when there was no additional information he needed. But the July 16, 2004 letter also failed to provide Mr. Titus with information about his appeal rights and the right to bring a civil action under ERISA, thereby failing to comply with 29 C.F.R. § 2560.503-1(g)(1)(iv).

Based on the ERISA requirements in both the statute and the regulations, the Court finds that the notification procedure in this case was deficient. However, "[n]ot every procedural

15

defect will upset the decision of plan representatives."[51]   Where the plan administrator fails to comply with ERISA's procedural guidelines by failing to make the adequate findings or to explain adequately the grounds of her decision, the appropriate remedy is to remand to the plan administrator for a redetermination of the claim.[52]   A remand for further action is unnecessary only if the evidence clearly shows that the administrator's actions were arbitrary and capricious, or the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground.[53]   Because the parties in this case do not seek remand and they have fully developed the record, the Court will determine whether the decision to deny Mr. Titus coverage was arbitrary and capricious.[54]

B.       **Reasonable Interpretation of the AIPC Plan**

In determining whether an administrator's decision was arbitrary and capricious, the Tenth Circuit looks to various indicia such as lack of substantial evidence, mistake of law, bad faith, and conflict of interest by a fiduciary.[55]   "'Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker].'"[56]   "Substantial evidence requires 'more than a scintilla but less than a

---

[51]*Sage v. Automation, Inc. Pension Plan and Trust*, 845 F.2d 885, 895 (10th Cir. 1988).

[52]*Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288–89 (10th Cir. 2002).

[53]*Id.* (citations omitted).

[54]*See Baker v. Tomkins Indus., Inc.*, 339 F. Supp. 2d 1177, 1188 (D. Kan. 2004) (finding it appropriate to determine whether the Plan Administrator's decision was arbitrary and capricious despite the procedural defects because the parties did not request remand and the factual record was fully developed).

[55]*Caldwell*, 287 F.3d at 1282.

[56]*Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992) (quoting *Flint v. Sullivan*, 951 F.2d 264, 266 (10th Cir. 1991)).

16

preponderance.'"[57]  "Substantiality of the evidence is based upon the record as a whole."[58]  When determining whether the evidence in support of the administrator's decision is substantial, a court must "'take[] into account whatever in the record fairly detracts from its weight.'"[59]  The Tenth Circuit gives less deference if a plan administrator fails to gather or examine relevant evidence.[60]

The Tenth Circuit has provided guidance to courts reviewing under the arbitrary and capricious standard by stating that: "'[t]he Administrator['s] decision need not be the only logical one nor even the best one.  It need only be sufficiently supported by facts within [his] knowledge to counter a claim that it was arbitrary or capricious.'"[61]  A court will uphold an administrator's decision "unless it is 'not grounded on any reasonable basis.'"[62]  "The reviewing court 'need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end.'"[63]

When determining whether the decision to deny coverage was arbitrary and capricious, the court "generally may consider only the arguments and evidence before the administrator at the time it made that decision."[64]  Here, the Court finds that the decision to deny coverage to Mr. Titus was unreasonable because there is not substantial evidence in the administrative record to

---

[57]*Id.*

[58]*Caldwell*, 287 F.3d at 1282.

[59]*Id.* (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)) (further citation omitted).

[60]*Id.* (citing *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir. 1999)).

[61]*Kimber*, 196 F.3d at 1098 (quoting *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1459 (10th Cir. 1991)).

[62]*Id.* (quoting *Woolsey*, 934 F.2d at 1459).

[63]*Id.* (quoting *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999)).

[64]*Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992) (citations omitted).

show that Mr. Titus's procedure fell into one of the policy's exclusion provisions.

Insurance law requires that the insured bears the burden of showing a covered loss has occurred while the insurer must prove facts showing that the loss falls into an exclusionary clause of the plan.[65]  In this case, the AIPC Plan argues that the medical evidence in the record proves that Mr. Titus's surgery was not a medically necessary procedure, but rather the procedure was necessary to cure a mechanical failure in the penile implant.  Dr. Weigel noted that the implant was not working properly, which was probably due to a kink in the system; Dr. Holzbeierlein found that the penile implant was no longer functioning properly, and explained that the penile implant is a mechanical device that can fail for mechanical reasons; and Mr. Titus denied, in a medical report, any acute problems except that his penile prosthesis was not working.  However, reliance on this medical evidence ignores the additional medical evidence supporting the conclusion that the surgery was a medically necessary procedure.  While Dr. Weigel mentioned the mechanical failure, he also noted that Mr. Titus had a little tenderness distally, and that while there was no infection at that time, infection is always a concern when there is pain around an implant.  Further, Dr. Holzbeierlein wrote a letter explaining that Mr. Titus's prosthesis was no longer functioning properly, and he noted that "[m]ore worrisome, however, is the discomfort in the right cylinder of the prosthesis.  This may often be an indicator of early infection.  Therefore, it is extremely important and medically indicated that the patient have this prosthesis removed and a new one placed."[66]  Thus, the Court finds that Mr. Titus met his burden of showing that the procedure was a covered expense in that it was medically

_____

[65]*Blair v. Metro. Life Ins. Co.*, 974 F.2d 1219, 1221 (10th Cir. 1992) (citing *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1205 (10th Cir. 1992)).

[66](AR 91.)

necessary.

In response, the AIPC Plan denied coverage to Mr. Titus explaining that the procedure fell into an exclusionary clause in the policy. In the July 16, 2004 letter, the Claims Supervisor explained to Mr. Titus that the procedure was excluded because the plan does not cover charges for "sex therapy" or "services or supplies received for treatment of complications resulting from services that are not covered." There is nothing in the administrative record showing that the Claims Supervisor relied on specific facts when making the decision that Mr. Titus's procedure fell within the exclusions of the plan. Rather, Mr. Titus was provided with a general reason for the denial by citing the exclusions of the plan, without any reasons or determinations as to why his procedure fell within these exclusions. The AIPC Plan now argues that Mr. Titus's procedure, the replacement of a prosthetic device used for erectile dysfunction, falls into the policy's exclusions as "sex therapy." However, the AIPC Plan cannot point to facts in the administrative record showing that the decision to deny coverage was based upon a determination that this procedure was "sex therapy." Additionally, there are facts in the administrative record supporting a determination that the procedure was not merely for "sexual therapy" when Dr. Holzbeierlein found the procedure to be "extremely important" and "medically indicated."[67] The AIPC Plan has not shown more than a scintilla of medical evidence in the administrative record that Mr. Titus's procedure fell into one of the exclusions of plan. Because there is not substantial evidence in the administrative record showing that Mr. Titus's procedure fell within the AIPC Plan's coverage exclusions, the Court finds that this decision was unreasonable. Therefore, the Court finds that the AIPC Plan's denial of coverage was arbitrary

---

[67](*Id.*)

and capricious.  Because there is no genuine issue as to whether the AIPC Plan violated ERISA by failing to made a reasonable determination regarding Mr. Titus's claim for benefits, Mr. Titus is entitled to summary judgment on his claim.  Further, since there is a genuine issue as to whether the AIPC Plan properly denied coverage to Mr. Titus, the Court denies the AIPC Plan's motion for summary judgment.

**C.      Prejudgment Interest, Attorney's Fees and Costs**

In addition to the charges for the medical procedure, Mr. Titus asks for pre-judgment interest, post-judgment interest, costs expended and attorney's fees in this action.  Under ERISA, a beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[68]  After the court determines that a beneficiary is entitled to recovery, the court has the authority to determine benefits due and to award them.[69]  "Once the court has determined that the participant has been wrongfully denied benefits, the court enters judgment for the amount of the benefits due with prejudgment interest for the unpaid sums from the date that they were due under the terms of the plan."[70]

Prejudgment interest is designed to compensate a wronged party for the period during which the party was denied the full use and benefit of money.[71]  "'The district court must first determine whether the award of prejudgment interest will serve to compensate the injured party.

---

[68]29 U.S.C. § 1132(a)(1)(B).

[69]*Johnson v. Dayco Products, Inc.*, 973 F. Supp. 1255, 1266 (D. Kan. 1997).

[70]*Id.* (citing *Short v. Cent. States, S.E. & S.W. Areas Pension Fund*, 729 F.2d 567 (8th Cir. 1984)).

[71]*Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1287 (10th Cir. 2002); *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1009 (3d Cir. 1992).

20

Second, even if the award of prejudgment interest is compensatory in nature, the district court must still determine whether the equities would preclude the award of prejudgment interest.'"[72] The Tenth Circuit looks to state law in determining the prejudgment interest rate in ERISA cases.[73]  Currently, the prejudgment interest rate in Kansas is 10%.[74]

Here, because Mr. Titus was deprived of payment for his medical procedure, the Court finds that prejudgment interest will serve to compensate Mr. Titus for this injury.  Further, the Court finds that an award of prejudgment interest is equitable because "it is an essential component of full compensation . . . ."[75]  Accordingly, the Court orders an award of prejudgment interest in this case at the statutory rate of 10% running from the date the claim for benefits was first filed.[76]

Plaintiff further requests the Court to award postjudgment interest.  By ordering postjudgment interest, the court achieves the statutory goal of compensating the plaintiff while removing defendant's incentive to delay payment of the judgment.  Under federal law, effective October 1, 1982, interest on a money judgment recovered in a civil case in a district court is calculated

> at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to

---

[72]*Caldwell*, 287 F.3d at 1286 (quoting *Eastman Kodak Co. v. Westway Freight, Inc.*, 949 F.2d 317, 321 (10th Cir. 1991)) (further quotations omitted).

[73] *Biava v. Insurers Admin. Corp.*, 48 F.3d 1231, 1995 WL 94461, at *5–6 (10th Cir. 1995) (unpublished table decision); *Van Hoove v. Mid-America Bldg. Maint., Inc.*, 841 F. Supp. 1523, 1536–37 (D. Kan. 1993); *Wilson v. Metro. Life Ins. Co.*, No. 03-2388-CM, 2005 WL 1661621, at *2 (D. Kan. July 15, 2005).

[74]K.S.A. § 16-201.

[75]*Caldwell v. W. Atlas Int'l, Inc.*, No. 93-2550-GTV, 2000 WL 1114977, at *1 (D. Kan. July 14, 2000).

[76]*Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1287 (10th Cir. 2002).

the date of the judgment.[77]

The judgment in this case will be entered on September 19, 2006.  Therefore, the

postjudgment interest on plaintiff's award is to be calculated at the rate provided by 28 U.S.C.

§ 1961(a) from September 19, 2006 through the date of payment.

A beneficiary may also recover attorney's fees and costs under ERISA.  29 U.S.C.

§ 1132(g)(1) states, "In any action under this subchapter . . . by a participant, beneficiary, or

fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to

either party."[78]  It is within the Court's sound discretion to determine whether a party is entitled

to an award attorney's fees in an ERISA action.[79]  A court should not award attorney's fees as a

"matter of course," because the decision is discretionary in nature.[80]  The Tenth Circuit considers

five factors when determining whether attorneys fees should be awarded under ERISA:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of
> the opposing parties to personally satisfy an award of attorney's fees; (3) whether
> an award of attorney's fees against the opposing parties would deter others from
> acting under similar circumstances; (4) whether the parties requesting fees sought
> to benefit all participants and beneficiaries of an ERISA plan or to resolve a
> significant legal question regarding ERISA; and (5) the relative merits of the
> parties' positions.[81]

These factors are merely guidelines, so the court need not consider them all; however, no single

factor is considered dispositive.[82]

---

[77]28 U.S.C. § 1961(a).

[78]29 U.S.C. § 1132(g)(1).

[79]*Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 108 (10th Cir.1983).

[80]*Id.*

[81]*Id.* (citations omitted).

[82]*McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1209 n.17 (10th Cir. 1992) (citing *Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 258 (1st Cir. 1986)).

22

In this case, the Court declines to award attorney's fees and costs.  First, there is no evidence that the AIPC Plan acted culpably or in bad faith.  Second, the Court has not been presented with evidence of the AIPC Plan's ability to pay an award of attorney's fees.  Third, the Court does not believe that an award of attorney's fees would deter others from acting under similar circumstances since the facts in the case are somewhat unique.  Fourth, in this case, Mr. Titus's claim does not seek to benefit all participants and beneficiaries of an ERISA plan and does not resolve a significant legal question regarding ERISA.  Finally, both parties presented meritorious arguments, and both parties have valid bases for their positions both in fact and law.  Thus, the Court finds that an award of attorney's fees and costs is inappropriate in this case.

**IV.     Conclusion**

Mr. Titus has shown that there is no genuine issue of material fact as to whether the AIPC Plan's decision to deny coverage for his medical procedure under the AIPC Plan was arbitrary or capricious.  Thus, Mr. Titus is entitled to summary judgment on his claim, and the Court awards Mr. Titus his claim for benefits along with prejudgment interest.  However, the Court declines to award Mr. Titus attorney's fees and costs.

Additionally, because Mr. Titus has shown a genuine issue as to whether he qualified for benefits under the plan, the AIPC Plan is not entitled to summary judgment, and the Court denies the AIPC Plan's motion.

**IT IS THEREFORE ORDERED** that third-party plaintiff, Mr. Titus's, motion for summary judgment (Doc. 20) is **GRANTED.**

**IT IS FURTHER ORDERED** that third-party defendant, AIPC Plan's, motion for summary judgment (Doc. 18) is **DENIED.**

**IT IS SO ORDERED**.

23

Dated this 19th  day of September 2006.


 S/ Julie A. Robinson

**Julie A. Robinson**
**United States District Judge**